IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

RODERICK DEMARIUS FREEMAN                                    PLAINTIFF
ADC #153597

V.                    Case No. 2:23-CV-00013-LPR-BBM

ANDRE HARPER, Correctional Officer,
Crittenden County Detention Center, *et al*.                 DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.      INTRODUCTION**

On January 23, 2023, Roderick Demarius Freeman ("Freeman"), then an inmate at the Crittenden County Detention Center ("CCDC"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. (Doc. 1). On February 9, 2023, Freeman filed an Amended Complaint.[1] (Doc. 3). The Court screened the Complaint

---

[1] Freeman's Complaint, (Doc. 1), and Amended Complaint, (Doc. 3), are virtually identical and assert the same claims against the same Defendants.

and Amended Complaint in accordance with the Prison Litigation Reform Act ("PLRA") and allowed Freeman to proceed with his claims against Correctional Officer Andre Harper ("Harper"), Sergeant Harley Mitchell ("Mitchell"), Lieutenant Charlton Beard ("Beard"), Administrator Jeffrey Thomas ("Thomas"), Chief Jailer Teresa Bonner ("Bonner"), and Internal Affairs Officer John Knighten ("Knighten") for allegedly falsifying criminal charges against him in retaliation for filing grievances and for sexually harassing him. (Doc. 11). Freeman was also allowed to proceed with his delayed and inadequate medical care claims against Nurse Marni Dickerson ("Nurse Dickerson"). *Id.* Collectively, the Court refers to the above-referenced parties as "Defendants."

On January 6, 2024, Defendants jointly filed a Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, a Brief in Support, and a Statement of Undisputed Material Facts. (Docs. 36–38). On February 13, 2024, Freeman filed a Response to the Defendants' Motion for Summary Judgment, alleging that he had written "well over 50 paper grievances" but that "all of them was [sic] disposed." (Doc. 41).[2] On February 20, 2024, Defendants filed a Reply, arguing only that Freeman failed to present the Court with "a copy of any such grievances." (Doc. 41). Therefore, the Defendants' Motion for Summary Judgment is ripe and ready for disposition. For the reasons stated herein, the Court recommends Defendants' Motion for Summary Judgment be granted for failure to exhaust administrative remedies.

---

[2] Embedded within his Response, Freeman included a Motion for Settlement. That request was denied by the Court. (Doc. 42).

## II.   BACKGROUND

### A.   Factual Allegations

Freeman alleges that, while he was incarcerated at CCDC, inmates charged with felonies and misdemeanors were housed together, "violating the breaches of security." (Doc. 3 at 5). Freeman, who was charged with a felony, further alleges that, on August 1, 2022, there was an incident between him and another inmate incarcerated for a misdemeanor charge, which led to the other inmate being injured, and Freeman facing additional criminal charges. *Id*.  Freeman claims that, after the August 1, 2022 incident, Harper—the officer for the pod in which the altercation took place—began "antagonizing [Freeman] & provoking him" by not feeding him when he fed everyone else. (Doc. 3 at 5). This led Freeman to later have a "nervous breakdown," during which he began throwing lunch trays. *Id*. Freeman claims, however, that he did not hit Harper with a lunch tray. *Id*. According to Freeman, Harper "lied and got me charged with 2nd [degree] Assault on a[n] Officer & 1st Degree Terroristic Threat [sic]."[3] *Id.*

At some time after the incident with Harper, Freeman alleges that he began making medical complaints regarding painful urination, but Nurse Dickerson refused him medical care for "a week straight." (Doc. 3 at 6). When Freeman was finally seen in the infirmary, he was required to give a urine sample, which he claims he did. *Id*. Days later, Nurse Dickerson informed Freeman that he was "clean." *Id.* Over a week went by with no further

---

[3] The Court takes judicial notice that information regarding Freeman's various state cases are openly available on "CourtConnect" on the Arkansas Judiciary website. *See* https://caseinfo.arcourts.gov (last visited June 3, 2024).  According to CourtConnect, Freeman had three felony cases filed on or after August 1, 2022.

treatment; yet, Freeman was still in "excruciating pain" and felt something was wrong. *Id*. Freeman made another "medical complaint" and "kept complaining" until Nurse Dickerson eventually sent Bonner to obtain another urine sample from Freeman, which Freeman provided. *Id.*

Freeman alleges he was called back to the infirmary "a week later" and was informed that he had gonorrhea in front of Beard. *Id.* Freeman claims that, in the process of being treated for gonorrhea, Beard made a "homosexual gesture/remark" when he saw Freeman's buttocks. *Id.* at 7. Specifically, Freeman alleges that Beard stated, "[e]wwww let me stab the needle in" while he was receiving an injection in his left buttock. *Id.* Freeman states he felt "violated as a man." *Id.* Freeman alleges that Harper, Mitchell, and Beard then spread rumors regarding his gonorrhea diagnosis, "as if [Freeman] still had an infection and did not get a shot." *Id.*

Freeman claims that all of these incidents occurred *after* the August 1, 2022 altercation involving him and another inmate, with whom he should never have been housed. He further alleges that, "I wrote grievances but they must've disposed [sic] them."[4] *Id.* He claims that he was unable to fully exhaust his grievances because Knighten was the individual who worked with the staff "to trump all types of falsified charges on me." *Id.* Freeman seeks a million dollars and requests that all of the named parties be terminated from their employment with CCDC. *Id.* at 8.

---

[4] In his Complaint, Freeman claims that he did *not* exhaust his grievances because "[t]here is no grievance system here at the jail. So[,] all complaints are to 'No Avail.'" (Doc. 3 at 5).

4

### B. Defendants' Motion for Summary Judgment

Defendants assert in their Motion for Summary Judgment that Freeman did not file *any* grievances concerning the claims raised in this lawsuit; thus, Freeman failed to exhaust administrative remedies. (Doc. 36 ¶ 3). Attached to their Motion for Summary Judgment is an affidavit by Thomas, stating, "[a]fter a review of Mr. Freeman's jail file, it is apparent that he never submitted any grievance concerning the allegations listed in his Amended Complaint." (Doc. 36-1 ¶ 5). In Defendants' Statement of Undisputed Material Facts, Defendants claim that: (1) the CCDC has a grievance procedure, (2) the digital kiosk system is not used for filing grievances, and (3) a review of Freeman's file shows that he did not file any grievances related to the claims in this lawsuit. (Doc. 38 ¶ 2–4).

### C. Freeman's Response to Defendants' Motion for Summary Judgment

In his Response to Defendants' Motion, Freeman claims he filed "well over" fifty paper grievances that were all "disposed." (Doc. 40 at 1). He states that, if there are no grievances against Mitchell and Harper, the "staff destroyed all evidence." *Id.* He further argues that all his medical complaints went through the kiosk medical system. *Id.*

Freeman then lists other grievances he has allegedly filed that are not related to the claims in this lawsuit, including an incident that occurred on January 20, 2023,[5] the date that the original complaint was mailed from the CCDC.[6] Freeman also discusses an

---

[5] Freeman alleges that, on January 20, 2023, "Harper threatened to get me killed." (Doc. 41 at 1).

[6] While Freeman did not date his initial complaint, the envelope that Freeman's Complaint arrived in is postmarked January 20, 2023. (Doc. 1 at 9).

incident that occurred on January 21, 2023.[7] (Doc. 40 at 2). Because both of these incidents occurred on or after the day Freeman mailed his Complaint, he cannot have exhausted his administrative remedies with respect to either claim. *See Jones v. Bock*, 549 U.S. 199, 214–15 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) ("Under *Jones*, [] a court can dismiss a case . . . for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust."); (Doc. 36-1 at 3–4). Because Freeman could not have possibly exhausted his post-Complaint claims before initiating this § 1983 action, he cannot pursue those claims in this action.

### D.    Defendants' Reply

Defendants filed a Reply to Freeman's Response to their Motion for Summary Judgment. The Reply was short and pointed:

> In Plaintiff Roderick Freeman's response (ECF 40) to Defendants' dispositive motion on the issue of exhaustion, he alleges that he submitted numerous handwritten grievances that were destroyed by jail staff. However, Mr. Freeman has not provided this Court with a copy of any such grievances.

(Doc. 41 ¶ 2).

---

[7] Freeman alleges that, on January 21, 2023, he attempted to have Mitchell sign his grievance regarding the January 20, 2023 incident with Harper. (Doc. 40 at 2). Freeman alleges that Mitchell stated she was not signing anything and brought Harper to Freeman's cell where Harper assaulted Freeman; specifically, Freeman alleges he was maced by Harper and then put on administrative lockdown by Mitchell. *Id.*

### III. DISCUSSION[8]

In support of their Motion for Summary Judgment, Defendants argue that Freeman failed to exhaust available administrative remedies before filing this lawsuit, as required by law. (Docs. 36–38). Specifically, Defendants allege that Freeman failed to file *any* grievances associated with the claims raised in this § 1983 action. (Doc. 36 ¶ 3). In support, Defendants submitted an affidavit from Thomas, who states that, after reviewing Freeman's file, "it is apparent that [Freeman] never submitted any grievances concerning the allegations listed in his Amended Complaint." (Doc. 36-1 ¶ 5). Freeman responded by arguing that he filed multiple *paper* grievances, but they were destroyed. (Doc. 40). Specifically, Freeman alleges that, "if there is [sic] no grievances I wrote against Harper and Mitchell the [s]taff destroyed all evidence." *Id.* at 1. Freeman concedes, however, that all of his *medical* grievances went through the kiosk system. *Id.* ("I never said I put

---

[8] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial by citing to particular parts of the materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" FED. R. CIV. P. 56(c); s*ee Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

grievances on the kiosk machine about this situation with Harper, Mitchell, and etc. … I put in medical request [sic] on the kiosk machines.") (ellipses in original).

### A.     The PLRA's Exhaustion Requirement

The PLRA requires prisoners to exhaust all available administrative remedies prior to filing a § 1983 action. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019). In order to do so, prisoners must fully and properly exhaust their available administrative remedies *as to each claim* that is later raised in a § 1983 action and complete the exhaustion process *before* initiating the § 1983 action. *Jones v. Bock*, 549 U.S. 199, 211, 219–20, 223–24 (2007); *Woodford*, 548 U.S. at 93–95; *Burns v. Eaton*, 752 F.3d 1136, 1141–42 (8th Cir. 2014); *Johnson v. Jones*, 340 F.3d 624, 626–28 (8th Cir. 2003) ("Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court…If exhaustion was not completed at the time of filing, dismissal is mandatory.") (emphasis in original). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90. Thus, to satisfy the PLRA, a prisoner must comply with the exhaustion requirements of the incarcerating facility before he can properly bring a claim in a § 1983 action.

The PLRA, however, "requires exhaustion of only 'such administrative remedies as are available.'" *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018) (quoting 42 U.S.C. § 1997e(a)). An administrative remedy is unavailable: "(1) where it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved

8

inmates; (2) where the administrative scheme is so opaque as to be practically incapable of use; and (3) where administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Muhammad*, 933 F.3d at 1000 (citation omitted) (cleaned up); *see also Foulk v. Charrier*, 262 F.3d 687, 697–98 (8th Cir. 2001) (holding that, "once [prison officials] failed to respond to [prisoner's informal resolution request], no further administrative proceedings were 'available' to him"); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (holding remedy unavailable when prison officials denied prisoner's requests for grievance forms).

### B. The CCDC Grievance Procedure

Defendants attached the CCDC grievance policy to their Motion. (Doc. 36-1 at 3–5). The CCDC grievance policy states: (1) no specific form is required, so long as "grievance" is listed on the outside of the paper and/or envelope;[9] (2) the grievance should be given to any staff member for delivery to the Jail Administrator, who reviews it immediately upon receipt; (3) the detainee, regardless of the merit of the grievance, will be informed of the disposition of the grievance, in writing, including all factual bases for the disposition, within ten working days after the grievance is received (48 hours if an emergency); (4) a detainee can appeal any decision regarding a grievance to the sheriff;[10] and (5) all grievances are placed in the detainee's jail file. *Id.*

---

[9] The policy also states that a form can be provided by officers should an inmate request one. (Doc. 36-1 at 3).

[10] Should an inmate fear retaliation at the first stage, the inmate can submit the grievance directly to the sheriff at the first step. (Doc. 36-1 at 2).

## C. Freeman's Alleged Grievances

Freeman does not attach any grievances to his pleadings because he claims they were all "disposed" or "destroyed." (Doc. 40). Defendants claim Freeman never filed any grievance related to the claims at issue in this lawsuit. (Doc. 36-1 ¶ 5).

While the Eighth Circuit has held that a "record keeper's declaration that a prisoner did not exhaust his grievance is insufficient to establish non-exhaustion as a matter of law when the prisoner makes sworn assertions that he took the necessary steps to exhaust," the analysis does not stop there. *Boyd v. Doe*, 746 F. App'x 599 (8th Cir. 2018) (unpublished). In *Boyd*, the Eighth Circuit held that material factual disputes precluded summary judgment for non-exhaustion where an ADC prisoner: (1) swore that prison officials failed to return some of the grievance attachments to him, preventing him from signing, dating and placing his ADC number on them and including them with his grievance appeal and (2) the appeal form did not instruct him to include his name, ADC number and date, or include spaces for that information. In the instant case, even drawing all *reasonable* inferences in Freeman's favor, there is simply no evidence, other than Freeman's statements, that that the grievance procedure was unavailable to Freeman.

Of the relevant cases that have addressed whether the grievance procedure was unavailable to the inmate, like *Boyd*, all involve far more specificity regarding the grievances that the inmate plaintiffs alleged they either attempted to or actually did submit. *See McPeek v. Blanchard*, 670 F. App'x 424 (8th Cir. 2016) (unpublished) (plaintiff provided an affidavit stating that he complied with the procedural requirements and provided a copy of a written document that appealed the lack of response he received);

*Conner v. Doe*, 285 F. App'x 304 (8th Cir. 2008) (unpublished) (plaintiff provided the number of grievances and the subject matter of the grievances); *Mitchell v. Brown*, No. 3:16-CV-103, 2016 WL 6304505, *1 (E.D. Ark. Oct. 5, 2016), *report and recommendation adopted*, 2016 WL 6272368 (E.D. Ark. Oct. 25, 2016) (plaintiff provided the number of grievances, who they were handed to, what the label on the grievance stated, and that he never received a response); *Bowden v. Banks*, 5:13-CV-00179, 2014 WL 6390276 (E.D. Ark. Nov. 14, 2014), *aff'd*, 607 F. App'x 618 (8th Cir. 2015) (plaintiff provided the exact date grievances were filed, the subject matter of the grievances, where he filed the grievances, and which officers refused to accept them); *Williams v. Payne*, No. 4:22-CV-00826, 2023 WL 11055215, *2 (E.D. Ark. Dec. 5, 2023), *report and recommendation adopted*, 2024 WL 1256349 (E.D. Ark. Mar. 25, 2024) (plaintiff provided a copy of the grievance in question and an affidavit explaining how he was prevented from completing the grievance); *see also Martin v. Pruitt*, No. 2:18-CV-00161, 2019 WL 7756255 (E.D. Ark. Jul. 31, 2019), *report and recommendation adopted*, 2019 WL 5459169 (E.D. Ark. Oct. 24, 2019) (a claim that a specific guard threatened plaintiff if he filed a grievance was insufficient to support plaintiff's failure to exhaust administrative remedies given that plaintiff had previous filed a multitude of grievances). Freeman includes no such information in support of his unavailability argument.

    Viewing the evidence in the light most favorable to Freeman, Freeman makes no more than vague and unsubstantiated allegations that he filed an unknown number of grievances on unspecified dates regarding unidentified claims that were all destroyed. Notably, other than the grievances for events that took place *after* he initiated this § 1983

action,[11] Freeman provides absolutely *no* specific information regarding the grievances that he alleges were destroyed. He does not articulate what violations were complained of in any of the grievances, nor does he state: (1) when he wrote the grievances, (2) who he attempted to give them to, and (3) why he failed to utilize the ability to appeal directly to the Sheriff if all else failed. *See* (Doc. 36 at 4) ("If for any reason a detainee fears use of the grievance procedure, the detainees [sic] grievance may be presented to the sheriff as an appeal."). While Freeman does name Harper and Mitchell in his Response, he states only that, if there are no grievances against them, then *those* grievances were destroyed, providing no further information about the subject matter of those grievances. (Doc. 40 at 1). Freeman admittedly alleges that he filed at least fifty handwritten grievances; however, he fails to name *any other* actors in connection with those grievances. *Id.* Freeman further fails to address how this contradicts his initial statement in his Amended Complaint that the CCDC does not have a grievance policy, so attempting to grieve anything is to "no avail." (Doc. 3 at 5); *see also Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000) (holding inmate's subjective beliefs about the grievance procedure are irrelevant).

Regarding Freeman's claim of delayed and inadequate medical care against Nurse Dickerson, there is no evidence that Freeman filed, attempted to file, or was prevented from

---

[11] Freeman provided extensive detail regarding the grievances he attempted to file *after* his Complaint was mailed. *See* (Doc. 41 at 2–3). For example, regarding the January 20, 2023 incident discussed in Freeman's Response, Freeman states that he tried to file a grievance; he had his mother and girlfriend call the jail regarding his grievance; he attempted to have Mitchell sign the grievance on January 21, 2023; and he was assaulted by Harper for attempting to file the grievance. *Id.* Likewise, when Freeman attempted to grieve the January 21, 2023 retaliatory threats by Mitchell and retaliatory assault by Harper, Freeman claims he wrote grievances, informed internal affairs about the incident, and had a recorded interview regarding the underlying incident. *Id.*

filing a grievance against Nurse Dickerson. Freeman states in response to Defendants' Motion that "[e]verything I mentioned medically is on the Medical Records on the Kiosk Machine." (Doc. 40 at 1). It is undisputed, however, that grievances cannot be submitted through the kiosk system, and Freeman does not argue that "Medical Records" are grievances. (Doc. 35 ¶ 3); (Doc. 40 at 1) (". . . there is no grievance option on the kiosk . . ."). Therefore, viewing the facts in the light most favorable to Freeman, Freeman failed to exhaust his administrative remedies as to his claim against Nurse Dickerson.

## IV.   CONCLUSION

In sum, viewing the record in the light most favorable to Freeman, Freeman's assertion that he filed over fifty grievances on unspecified dates about unspecified matters is too vague and unsubstantiated to create a genuine issue of material fact as to whether he properly exhausted his available administrative remedies. Thus, Defendants' Motion for Summary Judgment should be granted, and Freeman's claims should be dismissed, without prejudice, for failure to exhaust available administrative remedies.

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment, (Doc. 36), be GRANTED.

2. Freeman's retaliation and sexual harassment claims against Harper, Mitchell, Beard, Thomas, Bonner, and Knighten be DISMISSED, without prejudice, for failure to exhaust administrative remedies.

3. Freeman's delayed and inadequate medical care claim against Nurse Dickerson be DISMISSED, without prejudice, for failure to exhaust administrative remedies.

4.  Judgment be entered accordingly.

DATED this 15th day of August, 2024.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE